IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

SHELDON SMITH,                  :

    Plaintiff,              :   Case No. 3:11cv00067

vs.                             :   District Judge Walter Herbert Rice
                                      Magistrate Judge Sharon L. Ovington
DET. CRAIG POLSTON,             :

    Defendant.              :

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Sheldon Smith brings this case *pro se* naming Detective Craig Polston as the defendant. Plaintiff alleges that Detective Polston obtained an invalid search warrant by knowingly making material and false statements in his affidavit. (Doc. #3 at 5). Smith seeks an award of "$3,000,000 in compensatory damages once he proves the claims as asserted in [his] complaint." (*Id.*).

This case is presently before the Court upon Defendant Detective Craig Polston's Motion for Judgment on the Pleadings (Doc. #26), Plaintiff's Response (Doc. #28), Defendant's Reply (Doc. #29), and the record as a whole. Plaintiff has also filed a Motion for Summary Judgment. (Doc. #38).

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Defendant Detective Craig Polston contends he is entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Doc. #26).

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (also discussing, in part, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

### III. COLLATERAL ESTOPPEL

Defendant contends that he is entitled to judgment on the pleadings, in part, because Plaintiff's claim is barred by the doctrine of *res judicata*. (Doc. #26 at 6-9). An action under § 1983 does lie against an officer who obtains an invalid search warrant by making materially false statements in an affidavit in support of a search warrant. *Donta v. Hooper*, 774 F. 2d 716, 718 (6th Cir. 1985).

However, "[a]s a general rule, a federal civil action brought under § 1983 is not a venue for re-litigating issues that were decided in a prior state criminal case." *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005). "A state court judgment must be given the same preclusive effect in federal court that it would be given in the courts of the

2

rendering state." *Walker v. R. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) (citing *Migra v. Warren City School Dist. Bd. Of Educ.*, 465 U.S. 75, 85, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984) (other citations omitted)). Because Smith's criminal case took place in the Ohio courts, Ohio issue preclusion law applies in determining whether he may re-litigate any issues in this case that were previously decided in the Ohio courts. *McKinley*, 404 F.3d at 428. The Ohio Supreme Court describes the applicable preclusion doctrine as follows:

> [T]he doctrine of collateral estoppel, or more correctly issue preclusion, precludes further action on an identical issue that has been actually litigated and determined by a valid and final judgment as part of a prior action among the same parties or those in privity with those parties.

*State v. Williams*, 76 Ohio St.3d 290, 294, 1996 Ohio 408, 667 N.E.2d 932 (1996); *see McKinley*, 404 F.3d at 428-29 (and Ohio case cited therein). According to the Ohio Supreme Court, issue preclusion applies when a fact or issue "(1) was actually and directly litigated in the prior action (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 70 Ohio St. 3d 176, 1994 Ohio 358, 637 N.Ed.2d 917, 923 (Ohio 1994). Preclusive effect does not adhere to judgments by an Ohio court when the litigant against whom the preclusive effect is sought did not have a full and fair opportunity to litigate the claims or issue decided by the state courts. *See Allen v. McCurry*, 449 U.S. 90, 104, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980); *see also Walker*, 854 F.2d at 142. Indeed, "[t]he main legal thread which runs throughout the determination of the applicability of *res judicata*, inclusive of the adjunct principle of collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be 'heard' in

3

the due process sense. Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1268 (6th Cir. 1986).

Plaintiff alleges that Detective Polston knowingly made false and material statements in his affidavit in support of a search warrant. In support, Plaintiff points to the affidavit of one Carlos Anderson who avers that he was not confidential informant #3 and had no knowledge of Smith. (Doc. # 38, Exhibit # 1). Plaintiff argues that because the State admitted that CS#3 referred to in the affidavit was indeed Mr. Anderson, the affidavit is false.

Defendant argues that "[t]his same issue was the subject of a motion to suppress filed by Plaintiff in *State of Ohio v. Sheldon Smith*, Case No. 2008 CR 0926 filed in the Greene County Court of Common Pleas." (Doc. #26 at 8). Polston contends that "Plaintiff challenged the Xenia Municipal Court judge's finding of probable cause to issue a search warrant for his home and when he lost his motion to suppress, he appealed the trial court's decision to the Court of Appeals for the Second District of Ohio." (*Id.*). According to Polston, "[i]n that appeal, Plaintiff challenged the trial court's finding that Det. Polston's search warrant affidavit established probable cause to search his Xenia residence." (*Id.*). Polston argues that "Plaintiff's criminal prosecution offered him a full and fair opportunity to challenge the constitutionality of Det. Polston's search warrant affidavit," and "[a]s such, Plaintiff cannot maintain his claim under the Fourth Amendment against Det. Polston and

4

said claims should be dismissed." (*Id.* at 9).

Plaintiff argues that his "claims are not precluded under the doctrine of claim preclusion unless those claims were or could have been litigated in a prior action." (Doc. #28 at 4). Plaintiff contends that "[t]his suit does not arise from the same set of facts" because the basis for his claim, "Mr. Anderson's affidavit, and the defendant's corruption, had yet to be discovered." (*Id.*). According to Plaintiff, "[t]his Civil Complaint is based upon facts discovered during the week of September 28, 2009, within C.P.C. No. 2008CR-0926. Prior to the week of September 28, 2009, the Plaintiff was unaware of these facts." (Doc. #3 at 5). It is clear Plaintiff is correct that the issues raised herein were outside the record of the trial court, and therefore could not have been raised during those proceedings. That, however, is not to say that Smith could not have raised the issue in a subsequent state court proceeding, and, in fact, that is precisely the path he took.[2]

After Smith's conviction was affirmed by the Ohio Court of Appeals, he filed a motion for post-conviction relief pursuant to Ohio Revised Code § 2953.21 wherein he raised the alleged misconduct of Det. Polston. *See State v. Smith*, 2012 Ohio 113 (Ohio Ct. App., Greene County January 13, 2012). The trial court denied his motion on the basis that his claims were barred by res judicata. *Id*. Smith appealed the denial of his motion for post-conviction relief, contending the trial court erred by using res judicata to deny his motion.

---

[2] In addition to considering allegations contained in the complaint and any attachments thereto, a court may also consider "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)(citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

5

*Id.* The Ohio Court of Appeals determined that Smith's motion should not have been denied on the basis of res judicata, but nonetheless held that "the trial court properly denied Smith's R.C. 2953.21 motion on the alternative basis that Anderson's affidavit did not provide substantive grounds for relief." (*Id.* at *17, n.4). In so ruling, the Ohio Court of Appeals set forth the following:

> On appeal, Smith contends the trial court erred in denying his motion for post-conviction relief on the basis of res judicata and without an evidentiary hearing. Although Smith's pro-se brief touches on a range of issues, his appellate argument focuses on the fourth ground for relief cited by the trial court: police misconduct in the use of confidential sources to obtain a search warrant. There are two parts to his police-misconduct argument. First, the defendant reiterates that the information from Reginald "Tuffy" Brooks is not credible because the task force previously had been unwilling to work with Brooks. Second, Smith claims the affiant, detective Craig Polston, lied in his search-warrant affidavit about having obtained key information from a confidential source identified as "CS #3."
>
> . . . .
>
> The second part of appellant's police-misconduct argument involves detective Polston's search-warrant affidavit, which states at paragraph seventeen:
>
> "On May 23, 2008 an interview was conducted by Detectives Lon Etchison and Josh Julian, ACE Task Force[,] with a confidential source, hereafter referred to as CS #3. * * *     CS #3 stated that [Donald] Harrington works at the L.A. Lounge for Sheldon Smith and also sells quantities of cocaine for Sheldon Smith. CS #3 informed the detective that the cocaine found at 1152 Glover Drive was delivered to Carlos Anderson at the L.A. Lounge parking lot by Donald Harrington. Harrington took the quantity of cocaine from a vehicle owned by Sheldon Smith that was described as an older green four door vehicle. CS #3 told the detectives that Harrington was familiar with Smith's drug trafficking business from working at L.A. Lounge and Smith had been Harrington's boss since the L.A. Lounge opened. CS #3 told the detectives that after receiving the money for the cocaine Harrington took the money and placed it back in the green vehicle. CS #3 stated he/she purchased cocaine from Harrington numerous times at the L.A. Lounge and Harrington would always remove the cocaine from the vehicle and place the money back in the back seat or trunk area of the green vehicle. Harrington has told CS #3 that he has seen several hundred thousand dollars of U.S. currency and kilograms of cocaine at the

residence of Sheldon Smith in Xenia. Harrington bragged to CS #3 that Smith obtains fifty to sixty kilograms of cocaine from his Mexican connection each month. * * *." In the proceedings below, Smith moved to suppress evidence obtained as the result of a warrant that was issued based on Polston's affidavit. Arguing against suppression, but after completion of the evidentiary hearing, the State suggested to the trial court that CS #3 was "none other than Carlos Anderson." (Doc. #32 at 10, filed May 7, 2009). On direct appeal, this court upheld the trial court's denial of Smith's motion to suppress. In so doing, this court relied, in part, on the information police had obtained from CS #3, reasoning:

"With regard to CS 3, he admitted to police that he had purchased cocaine from Donald Harrington numerous times, thereby making a statement against his penal interests and adding to his reliability. CS 3 also told police that Harrington sold drugs for Sheldon Smith out of the L.A. Lounge. His basis for knowing this information presumably came from his prior purchases of cocaine from Harrington. CS 3 additionally stated that Harrington always put the money in an older green vehicle owned by Smith. Police independently confirmed that Smith owned a green 1992 Honda Accord, which helped to corroborate CS 3's claim. Police also established that Smith's mother was the president of the L.A. Lounge and owned its liquor license. CS 3 further told police that Harrington had admitted seeing several hundred thousand dollars in cash and kilograms of cocaine in Smith's residence. Harrington also told CS 3 that Smith obtains fifty to sixty kilograms of cocaine each month. CS 3 knew this information because Harrington told him, and Harrington presumably knew it because he sold drugs to CS 3 and others for Smith. Although CS 3 did not indicate when Harrington had seen the money and kilograms of cocaine in Smith's residence, we find it noteworthy that Harrington bragged to CS 3 about Smith receiving fifty to sixty kilograms of cocaine each month. The substantial size and regularity of this delivery gave the magistrate a reasonable basis for concluding that drugs remained present in Smith's home at the time of the warrant request."

To put the facts related in paragraph seventeen of the affidavit in perspective, examination of other facts is necessary. A fair reading of the entire record reveals that it is undisputed that Donald Harrington worked for Sheldon Smith at the L.A. lounge. The defendant himself provided information that led to the issuance of a search warrant for the 1549 East Main Street address in Xenia where an additional forty-two kilograms of the defendant's cocaine were located. The defendant's information was listed in the affidavit for the 1549 East Main Street warrant, at ¶ 22, as being from confidential source #4. (State Exhibit 4, suppression hearing, April 23, 2009.) Thus, it was Sheldon Smith, himself, who admitted to detectives that for over a year he was distributing between twenty-five and fifty kilograms of cocaine a month that he obtained from several Hispanic males. (State's Exhibit 4, at ¶22) Moreover, Carlos Anderson was known to be a drug trafficker before detectives searched Smith's home.

(Transcript of proceedings, September 16, 2009, at 41.) Three hundred grams of cocaine were found in Anderson's house. (Search warrant affidavit, at ¶16). Donald Harrington admitted to being a significant drug trafficker. (Transcript of Proceedings September 16, 2009, at 44.) In an interview with authorities on July 1, 2008, Sheldon Smith identified a picture of Carlos Anderson. (Id. 53). Anderson was convicted of drug dealing. (Id. at 53-54). Smith admitted that Donald Harrington was involved with at least five kilograms of his cocaine. (Id. at 63). The net result of this undisputed or admitted information is that Smith was a major drug dealer, Harrington worked for Smith, Harrington was part of Smith's drug distribution network, and Carlos Anderson was an admitted drug trafficker.

In the January 13, 2010 affidavit accompanying Smith's post-conviction relief filings, Carlos Anderson averred:

"I Carlos Anderson, depose the following to be true under the penalty of Perjury of the Laws of the State of Ohio;

"1) I have never been a Confidential Informant, or worked with The Xenia Police Department, Task Force, or any other Law Police Department, Local, or Federal.

"2) I have never given an interview to a Detective Lon Etchison or Josh Julian of Ace Task Force, on 5/23/2008, giving them information on Sheldon Smith.

"3) I have no knowledge of any Sheldon Smith, business dealings, or personal dealings.

"4) I have recently come into the knowledge that I was listed as CS #3 (CONFIDENTIAL SOURCE), [i]n a[n] Affidavit for Search Warrant, taken out by Det. Craig Polston, to search a property listed as: 2396 Louisiana Drive Xenia (Greene County), Ohio, which is not true. Said statements [were] used to secure a search warrant of the above listed property.

"5) My name was revealed as CS #3, during a suppression hearing, when my name was turned over by the State of Ohio, as a Confidential Source. (Which is totally untrue)."

(Anderson affidavit, attached to Doc. #130).

Anderson's affidavit does not deny the underlying factual information that the detective included in the application for the search warrant. It just denies that he is the source of that information. Nor does the defendant independently supply factual information of his own denying that he was a major drug dealer with a Mexican

connection, or that Donald Harrington worked for him and was involved in Smith's drug-distribution network, or that Harrington had seen several hundred thousand dollars of currency and kilograms of cocaine at Smith's residence. There is a reason he has not denied those facts. They are true. Almost $600,000 and thirteen kilograms of cocaine were found in Smith's residence. "Throughout the month of May 2008, Sheldon Smith conspired with Donald Harrington on at least two separate occasions to arrange the sale of multiple kilograms of cocaine to Carlos Anderson." (Rendition of Facts, Transcript of No-Contest Plea, June 1, 2009, at 21)." Two nearly (sic) years Sheldon Smith received hundreds of kilograms of cocaine from his drug suppliers and he would use a network of people to distribute that cocaine. Those people include, but not limited to, Donald Harrington and Carlos Anderson." (Id. at 23.) "Throughout the month of May 2008, Sheldon Smith conspired with Donald Harrington on at least two separate occasions to arrange the sale of multiple kilograms of cocaine to Carlos Anderson.* * * The proceeds of those cocaine sales were returned to Shelton (sic) Smith." (Id. at 22-23.) This leads to the inescapable conclusion that either detective Craig Polston, the affiant, was informed of the facts in paragraph seventeen of the search-warrant affidavit by CS#3 or he is clairvoyant and able to predict specific, multiple facts that were later found to be accurate.

A singular question remains: was Carlos Anderson CS #3? Regardless of the answer to this question, however, Anderson's affidavit fails to provide Smith with grounds for post-conviction relief. If Anderson provided the information attributable to CS #3, but he now denies it, then his affidavit is false and unhelpful to Smith. On the other hand, if Anderson was not CS #3, then his affidavit is true but still unhelpful. If CS #3 was not Anderson, this does not undermine the factual information contained in detective Polston's affidavit or the reliability of that information, which was largely corroborated and ultimately proved to be accurate. If Anderson was not CS #3, then someone other than Anderson provided the information upon which Polston relied. The only argument Smith can make that could lead to the conclusion that Polston provided false information in the affidavit is if one were to speculate that Polston made up the accurate information that he, Polston, attributed to Anderson, but that the information was not provided by Anderson. The trial court was not required to believe in mythology or clairvoyance. Because Anderson's affidavit does not controvert the underlying factual information in Polston's search-warrant affidavit, the trial court correctly held that "the facts alleged and presented by Defendant, if proved, do not entitle him to [the] relief sought." For this reason, and regardless of the true identity of CS #3, we continue to believe that Polston's affidavit was sufficient to support the issuance of a search warrant and the trial court did not abuse its discretion in overruling the motion for post conviction relief. Accordingly, Smith's assignment of error is overruled.

*Smith*, 2012 Ohio 113 at *7-*17 (footnotes omitted).

A review of the Court of Appeals' decision clearly shows that Smith has already litigated the identical issues presented in this case in his motion for post-conviction relief. *Id.* The Court of Appeals considered the evidence discovered by Smith regarding the alleged misconduct of Polston and concluded, even in light of the newly discovered information and allegations, "Polston's affidavit was sufficient to support the issuance of a search warrant . . . ." *Id.* at *17. As the claims set forth by Smith in this case were actually and directly litigated by him in the Ohio courts on his motion for post-conviction relief, he is precluded from re-litigating them here. *Prokos v. City of Athens*, 118 Fed. Appx. 921; 2004 U.S. App. LEXIS 26614 (6th Cir. 2004).

Accordingly, Defendant Polston's Motion for Judgment on the Pleadings (Doc. #26) is well-taken.[3]

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Detective Craig Polston's Motion for Judgment on the Pleadings (Doc. #26) be GRANTED and this case DISMISSED;

2. Plaintiff Sheldon Smith's Motion for Summary Judgment (Doc. # 38) be DENIED;

3. Plaintiff Sheldon Smith's Motion for Order of Trial Preparation Materials (Doc. #30); Motion for Order Compelling Defendants to Produce Discovery of Trial Preparation Materials (Doc. #31); Motion for Issuance of Subpoena for Production of Trial Preparation Documents (Doc. #35); Objection to Magistrate Judge's Order (Doc. #36); and, Motion to Appoint Counsel (Doc. # 37) be DENIED as moot;

---

[3] As Plaintiff's claims are precluded from being re-litigated, this Court need not address other grounds for dismissal set forth in Defendant's Motion for Judgment on the Pleadings (Doc. #26).

3. The Court certify pursuant to 28 U.S.C. §1915(a)(3) that for the foregoing reasons an appeal of an Order adopting this Report and Recommendations would not be taken in good faith, and consequently, leave for Plaintiff to appeal *in forma pauperis* should be denied; and,

4. This case be terminated on the docket of this Court.


April 6, 2012 
                     s/ Sharon L. Ovington
                      Sharon L. Ovington
                  United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).